## In the District Court of the United States
## For The District of South Carolina
BEAUFORT DIVISION

GAIL P. SMITH,                          )      Civil Action No. 9:06-1949-MBS-GCK
                                        )
                    Plaintiff,          )
                                        )
vs.                                     )
                                        )
MICHAEL S. ASTRUE,                      )      **REPORT AND RECOMMENDATION**
Commissioner of Social Security,[1]     )      **OF THE MAGISTRATE JUDGE**
                                        )
                    Defendant.          )
_____)

### I. INTRODUCTION

This case is before the Court pursuant to Local Civil Rule 83.VII.02, D.S.C.,

concerning the disposition of Social Security cases in this District, and Title 28, United States

Code Section 636(c). The plaintiff, Gail P. Smith (the "Plaintiff" or "Claimant"), brought this

action pursuant to Section 205(g) of the Social Security Act, as amended, 42 U.S.C. § 405(g),

to obtain judicial review of a final decision of the Commissioner of Social Security denying

her claim for disability insurance benefits ("DIB") under Title II of the Social Security Act,

42 U.S.C. §§ 401-433.[2]

_____

[1]   Michael J. Astrue became Commissioner of Social Security on February 12, 2007, and is,
therefore, substituted for Jo Anne B. Barnhart as the defendant in this case pursuant to Federal
Rule of Civil Procedure 25(d)(1).

[2]   The Social Security Disability Insurance Program, established by Title II of the Act as amended,
42 U.S.C. § 401 *et seq.*, provides Disability Insurance Benefits ("DIB") to disabled persons who
have contributed to the program while employed. The regulations for determining disability are
set forth at 20 C.F.R. pt. 404. All references to the Code of Federal Regulations (C.F.R.) herein
are to the 2006 edition.

## II. BACKGROUND TO THE CLAIM

Plaintiff was born on December 3, 1947 (Tr. 303) and graduated from high school. (Tr. 304)  She worked as a shipping and receiving clerk at the distribution center for Babies 'R' Us, as a manicurist, as a telemarketer, and as an insurance claims examiner.  (Tr. 51-58, 305)  Most recently, from August 2000 to August 2002, she worked as a wage verifications specialist at the corporate headquarters for Ryan's Steakhouses ("Ryan's).  (Tr. 304)  The Plaintiff alleges disability as of August 3, 2002, the date she last worked for Ryan's.  (Tr. 306)

## III. ADMINISTRATIVE PROCEEDINGS

Plaintiff filed an application for DIB on April 24, 2003, alleging disability since August 3, 2002, due to due to degenerative disc disease with chronic low back pain, osteoporosis, osteoarthritis, recurrent bronchitis, depression, and a seizure disorder.  (Tr. 24, 47-49, 62-71)  On October 9, 2003, the State disability determination agency found that Plaintiff was disabled as of June 26, 2003, because her affective disorder and back disorder rendered her capable of less than the full range of sedentary work.  (Tr. 25, 29-30)  Plaintiff requested reconsideration of the State agency decision, alleging that the evidence supported a finding that she was disabled as of her alleged onset date of August 3, 2002, approximately ten (10) months earlier.  (Tr. 28)  On June 24, 2004, Plaintiff's request for reconsideration was denied.  (Tr. 24, 34-36)  She requested a hearing, which was held before administrative law judge William H. Hauser (the ALJ) on October 7, 2005 in Greenville, South Carolina. (Tr. 26, 299-322)  Plaintiff was present, and represented by John Duggan, Esquire.  In a

decision dated March 13, 2006, the ALJ affirmed the decision of the Social Security

Administration that Plaintiff was not disabled before June 26, 2003, the date that the State

disability determination agency found her disabled.  (Tr. 11-17)

The Plaintiff requested review of the ALJ's decision, which the Appeals Council

denied on May 9, 2006.  (Tr. 3-6)  Thus, the ALJ's decision is the Commissioner's final

decision for purposes of judicial review.  *See* 42 U.S.C. § 405(g); 20 C.F.R. § 404.981 (2006).

On July 5, 2006, the Plaintiff filed this action seeking judicial review of the Commissioner's

decision.

## IV.  THE COMMISSIONER'S FINDINGS

In making her determination that the Plaintiff was not entitled to benefits, the

Commissioner has adopted the following findings of the ALJ:

1. The claimant met the nondisability requirements for a period of disability and Disability Insurance Benefits set forth in Section 216(i) of the Social Security Act and is insured for benefits through December 31, 2007.

2. The claimant has not engaged in substantial gainful activity since August 3, 2002, the alleged onset date.

3. The claimant's degenerative disc disease of the cervical and lumbar spine with chronic lower back pain and radiculopathy and resulting mood disorder were impairments considered "severe," based on the criteria in the Regulations (20 CFR § 404.1520(b)).

4. The claimant's severe impairments did not meet or medically equal the criteria of any listed impairments in Appendix 1, Subpart P, Regulation No. 4.

5. The claimant's testimony was not fully credible and did not support a finding of disability during the period of time at issue.

6. All the medical opinions regarding the severity of the claimant's impairments have been carefully considered (20 C.F.R. § 404.1527).

7. During the period of time at issue, the claimant had the residual functional capacity for light work, as set out in the body of this decision.

8.      The claimant was able, during the period of time at issue, to perform her past relevant work as a wage verification specialist (20 C.F.R.§ 404.1565).

9.      The claimant was not under a "disability," as defined in the Social Security Act, during the period of time at issue (20 CFR 404.1520(f)).  (Tr. 16)

## V.  SCOPE OF REVIEW

Under the Social Security Act, 42 U.S.C. § 405(g), this Court's scope of review of the Commissioner's "final decision regarding disability benefits is limited to determining whether the findings are supported by substantial evidence and whether the correct law was applied." *Walls v. Barnhart*, 296 F.3d 287, 290 (4th Cir. 2002).

The Court's scope of review is specific and narrow.  It does not conduct a *de novo* review of the evidence, and the Commissioner's finding of non-disability is to be upheld, even if the Court disagrees, so long as it is supported by substantial evidence.  42 U.S.C. § 405(g); *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972).  "Substantial evidence" is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Teague v. Califano*, 560 F.2d 615, 618 (4th Cir. 1977).  Such evidence "consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." *Shivey v. Heckler*, 739 F.2d 987, 989 (4th Cir. 1984).  Such evidence is generally equated with the amount of evidence necessary to avoid a directed verdict.  *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990).  It is the duty of the ALJ reviewing the case, and not the duty of the Court, to make findings of fact and resolve conflicts in the evidence.  *Hays*, 907 F.2d at 1456.  In reviewing for substantial evidence, the court does not weight conflicting evidence, make credibility determinations, or substitute its judgment for that of the agency.  *Id.*  If

substantial evidence supports the Commissioner's decision that a claimant is not disabled, the

decision must be affirmed. *Blalock*, 483 F.2d at 775.

## VI.  THE APPLICABLE LAW AND REGULATIONS

The Social Security Act provides that disability benefits shall be available to those

persons insured for benefits, who are not of retirement age, who properly apply, and who are

"under a disability."  42 U.S.C. § 423(a).  Disability is defined in 42 U.S.C. § 423(d)(1)(A)

as:

> the inability to engage in any substantial gainful activity by reason of any
> medically determinable physical or mental impairment which can
> expected to result in death or which has lasted or can be expected to last
> for at least 12 continuous months.

To facilitate a uniform and efficient processing of disability claims, the Social Security

Act has by regulation reduced the statutory definition of "disability" to a series of five

sequential questions that are to be asked during the course of a disability determination.  20

C.F.R. §§ 404.1520, 1520a (2006); *Heckler v. Campbell*, 461 U.S. 458 (1983); *Mastro v. Apfel*,

270 F.3d 171, 177 (4th Cir. 2001); *Hall v. Harris*, 658 F.2d 260 (4th Cir. 1981).  The five

questions are:

> (1) Whether the claimant is engaged in substantial gainful activity as defined in Sections
> 404.1510, 404.1571 et seq.  If such determination is affirmative, no disability will be found.  20
> C.F.R. § 404.1520.
>
> (2) Whether the claimant's impairments meet the durational requirement (Section 404.1509), and
> are severe (Section 404.1520(c)).  If they do not meet those requirements, no disability will be
> found.  20 C.F.R. §§ 404.1509, 404.1520(c).
>
> (3) Whether the claimant has an impairment which meets or medically equals a condition
> contained within the Social Security Administration's official listing of impairments (at 20 C.F.R.
> Pt. 404, Subpart P, App. 1) (the "Listing of Impairments") 20 C.F.R. § 404.1520(d).  If one of the
> listings is met, disability will be found without consideration of age, education or work experience.
> 20 C.F.R. § 404.1520(d).
>
> (4) Whether the claimant has an impairment which prevents past relevant work.  20 C.F.R. §
> 404.1520(e).

(5) Whether, in light of vocational factors such as age, education, work experience and RFC, the claimant is capable of other work in the national economy. The claimant is entitled to disability only if the answer is "no." 20 C.F.R.§ 404.1520(f).

An individual may be determined not disabled at any step if found to be: gainfully employed, not severely impaired, not impaired under the Listing of Impairments, or capable of returning to former work. In such a case, further inquiry is unnecessary. If, however, the claimant makes a showing at Step Four that return to past relevant work is not possible, the burden shifts to the Commissioner to come forward with evidence that the claimant can perform alternative work and that such work exists in the national economy. *English v. Shalala*, 10 F.3d 1080 (4th Cir. 1993); *Harper v. Bowen*, 854 F.2d 678 (4th Cir. 1988); *Coffman v. Bowen*, 829 F.2d 514 (4th Cir. 1987). The Commissioner may meet this burden by relying on the Medical-Vocational Guidelines (the "Grids") or by calling a vocational expert to testify. 20 C.F.R. § 404.1566. The Commissioner must prove both the claimant's capacity and the job's existence. *Grant v. Schweiker*, 699 F.2d 189, 191 (4th Cir. 1983).

## VII. ANALYSIS OF THE ALJ'S DECISION

At the first step of the sequential evaluation process, the ALJ found that the Plaintiff had not engaged in substantial gainful activity since August 3, 2002, her alleged onset date of disability. (Tr. 12, 16, Finding 2) At the second step, the ALJ found that Plaintiff's "severe" impairments[3] between August 3, 2002 and June 26, 2003, the time period relevant to this case (the "Relevant Time Period"), consisted of degenerative disc disease of the cervical and lumbar spine with chronic lower back pain, radiculopathy, and a mood disorder. (Tr. 13, 16, Finding 3)

---

[3]     An impairment or combination of impairments is "severe" if it "significantly limits [an individual's] physical or mental abilities to do basic work activities." Id. § 404.1520(c); *see also Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987); SSR 96-3p; SSR 85-28.

At the third step, the ALJ found that Plaintiff's impairments were not presumptively disabling

during the Relevant Time Period because they did not meet or equal one of the impairments

listed in the Listing of Impairments. (Tr. 13, 16, Finding 4) At the fourth step, the ALJ found

that during the Relevant Time Period, Plaintiff retained the residual functional capacity to

perform light work that did not require more than occasional stooping. (Tr. 15-16, Finding 7)

The ALJ found that Plaintiff's residual functional capacity did not preclude her from returning

to her past relevant semi-skilled sedentary work as a wage verification specialist (see Dictionary

of Occupational Titles ("DOT"), 4th ed. 2000, No. 215.382-014) during the Relevant Time

Period. (Tr. 15-16, Finding 8) Therefore, the ALJ found that, prior to June 26, 2003, Plaintiff

was not disabled. (Tr. 16-17, Finding 9) In so finding, the ALJ carefully considered the

medical opinions regarding the severity of the claimant's impairments, and also found that the

Plaintiff's testimony was not fully credible and did not support a finding of disability during the

Relevant Time Period. (Tr. 16, Findings 6 and 5)

### VIII. PLAINTIFF'S OBJECTIONS

The Plaintiff raises three objections in her Brief:

I.    The ALJ committed reversible error by failing to give "great weight" to the opinions of the
      Plaintiff's treating physicians, Drs. Crow and Kellett, that she was totally disabled as of
      August 3, 2002.

II.   The ALJ committed reversible error by applying an improper standard when assessing
      the pain suffered by the Plaintiff.

III.  The final administrative decision of the Social Security Administration that the Plaintiff
      became disabled on June 23, 2003, rather than August 3, 2002, is not supported by
      substantial evidence.

### IX. DISCUSSION

#### Introduction

By Brief, the Plaintiff contends:

> The only reason the Social Security Administration chose June 23, 2003, as the onset date of Mrs. Smith's disability rather than August 3, 2002, is the consulting report of Karl Bodtorf, a psychologist. However, a review of the medical records for Mrs. Smith's treatment prior to her one-time examination by Mr. Bodtorf and the records of her treatment after she saw Mr. Bodtorf shows no appreciable difference in her condition. She was suffering from the same impairments to the same degree prior to seeing Mr. Bodtorf as she did afterwards. She was taking essentially the same medications for the same conditions before and after the day she saw Mr. Bodtorf. Nothing appreciable changed as of the date of this consulting examination. Stated differently, if Mrs. Smith was disabled on June 23, 2003, she was just as disabled on August 3, 2002.[4]

The record reflects that the Plaintiff's credibility was a significant issue in this case. The Plaintiff's alleged date of disability is the same date she last worked at Ryan's. Significantly to the ALJ, the Plaintiff testified at the hearing that she had been terminated by Ryan's, but had stated on her disability report that she had been laid off. (Tr. 306, 314) The Plaintiff told Dr. Hunt in August 2003 that she had been let go because Ryan's had discontinued her job. (Tr. 14) At the hearing, the Plaintiff confirmed that she had been terminated because of memory problems associated with Dilantin, but also testified that she had drawn unemployment compensation for approximately six months thereafter. (Tr. 314-315) The ALJ observed that there was no evidence in the record to support the Plaintiff's claim that her use of Dilantin caused memory deficits. Furthermore, the Plaintiff testified that her memory had become a problem *before* she went to work at Ryans (Tr. 307), and the ALJ observed that the Plaintiff had successfully performed that job for two years while taking Dilantin. (Tr. 14) The Plaintiff also testified that she missed a lot of work at Ryan's both because of her own condition, and because her mother was in a nursing home and the Plaintiff had to attend to her, until her death in December 2002. (Tr. 14, 309-310) The ALJ found that the Plaintiff's testimony was not wholly consistent with the weight of the medical evidence, was not fully credible, and therefore failed to support a finding of disability. Specifically, the ALJ found that the Plaintiff's application for

---

[4]    Plaintiff's Brief at 17-18.

and receipt of unemployment compensation for at least six months after her alleged onset date of

August 3, 2002 (during the Relevant Time Period) was "inconsistent both with a termination for

cause and with an inability to work." (Tr. 14)

The ALJ's credibility determinations are entitled to deference by this court. *Shively v.*

*Heckler*, 739 F.2d 987, 989-90 (4th Cir. 1984) (holding that the ALJ's credibility determinations

are entitled to great weight because the ALJ had the opportunity to observe the demeanor and

assess the credibility of the claimant). The ALJ was not required to accept without question the

Plaintiff's complaints. *See Craig*, 76 F.3d at 591. Instead, when determining the credibility of

Plaintiff's subjective complaints, the ALJ properly considered all of the evidence, medical and

non-medical. *Id.* at 595; *see also Mickles*, 29 F.3d at 921; *Gross*, 785 F.2d at 1166; 20 C.F.R. §

404.1529. Because the ALJ's credibility determination is supported by substantial evidence, the

court will defer to it and not substitute its judgment for that of the ALJ, the finder of fact. *See*

*Hays*, 907 F.2d at 1456.

With this background in mind, the court will address the Plaintiff's three issues.

I.      The ALJ committed reversible error by failing to give "great weight" to the opinions of the
        Plaintiff's treating physicians, Drs. Crow and Kellett, that she was totally disabled as of
        August 3, 2002.

First, Plaintiff argues that the ALJ erred when he failed to "give great weight" to the

opinions of the Plaintiff's treating physicians, Dr. Crow and Dr. Kellett, "that she was totally

disabled as of August 3, 2002."[5] As a threshold matter, the Plaintiff's argument appears

premised on prior Fourth Circuit precedent which obligated an ALJ to give "great weight" to the

opinions of treating physicians and to disregard such opinions "only if there was persuasive

_____

[5]      Plaintiff's Brief [8] at p. 11.

Page 9 of 18

contrary evidence." *Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987); *see also Wilkins v. Secretary, HHS*, 953 F.2d 93, 96 (4th Cir. 1991); *Foster v. Heckler*, 780 F.2d 1125, 1130 (4th Cir. 1986).

This "treating physician rule" was, however, superseded in 1991 by the agency's promulgation of 20 C.F.R. § 404.1527. *See Shrewsbury v. Chater*, 1995 U.S.App. LEXIS 27968, 1995 WL 592236 at * 9 n. 5 (4th Cir. 1995) (unpublished) ("As regulations supersede contrary precedent . . . the "treating physician rule" . . . [is no longer] controlling"). Under 20 C.F.R. § 404.1527, the opinion of a treating physician is entitled to more weight than the opinion of a non-treating physician, but it is entitled to controlling weight only if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] record." 20 C.F.R. § 404.1527 (emphasis added). Likewise, an ALJ is not bound by a treating physician's proffered opinion of disability, because final responsibility for determining the ultimate issue of disability is always reserved to the Commissioner pursuant to Regulation. *See* 20 C.F.R. §§ 404.1527(e)(1) and (2); *Morgan v. Barnhart*, 142 Fed.Appx. 716, 722 (4th Cir. 2005) (holding that a treating physician's opinion that claimant was "disabled," "unable to work," could not work an eight hour job, and/or could not do her previous work was not entitled to controlling weight).

It follows, then, that the ALJ was not obligated to give "great weight" to the opinions of the Plaintiff's treating physicians, Dr. Crow and Dr. Kellett, but to consider and weigh their opinions in accordance with the criteria set forth in the Regulation. As the record reflects, neither of these treating physicians saw the Plaintiff in August 2002. Indeed, as the ALJ noted,

the Plaintiff began treatment at Abner Creek Family Medicine in April 2002. She was seen by Virginia Knight, a nurse practitioner, for sinus and bronchial congestion. (Tr. 198)

In July 2002, the Plaintiff returned to Ms. Knight, complaining of lower back pain. Ms. Knight found that Plaintiff had a positive straight leg raise test on the left at 30 degrees, and a "mildly positive" straight leg raise test on the right at 60 degrees. She also found that Plaintiff had 4.5/5 muscle strength bilaterally and that she demonstrated pain when she tried to rise on her heels and perform heel-toe walking. Ms. Knight diagnosed Plaintiff with intervertebral disc disease and left sacroiliac pain, and she prescribed anti-inflammatory and narcotic medications. (Tr. 193; 13) Plaintiff again saw Ms. Knight in September 2002, with complaints of cough, headaches and chronic lower back pain. Ms. Knight diagnosed rhinitis and bronchospasms, intervertebral disc disease, and major depressive disorder and the Plaintiff was prescribed a bronchodilator, a decongestant, and anti-depressant medications. (Tr. 192, 13) As the record reflects, the Plaintiff was not seen by any health care professional in August, 2002, when she alleged she became disabled.

As the ALJ noted, Dr. Crow stated on October 13, 2003: "Gail P. Smith has been disabled due to intervertebral disc disease and chronic low back pain. Mrs. Smith has not been able to work since August, 2002." (Tr. 13, 181) It is obvious that Dr. Crow's opinion is not contemporaneous, but was rendered some fourteen (14) months after the date that the Plaintiff alleged disability. Similarly, Dr. Kellett stated on August 5, 2004, two years after the date of Plaintiff's alleged date of disability, that Plaintiff had been disabled since August 2002. (Tr. 166) The ALJ noted that "in response to the question of what clinical findings supported his opinion, Dr. Kellett wrote: "this patient[.]" (Tr. 13, 168) As the ALJ correctly noted: "The

opinions of both Dr. Crow and Dr. Kellett were offered without elaboration, analysis or rationale.  Furthermore, they were inconsistent with the weight of the medical evidence of record, including the progress notes from Abner Creek Family Medicine, which indicated generally that the claimant complained of chronic pain, but had essentially full strength and function throughout the body.  For these reasons, the opinions of Dr. Crow and Dr. Kellett, to the extent that they were intended to apply to the period of time at issue, have been given little weight." (Tr. 14)  The court finds that the ALJ properly gave these opinions "little weight" in light of their conclusory nature.  *See Craig v. Chater*, 76 F.3d 585, 590 (4th Cir. 1996) (finding that a treating physician's opinion may be assigned little or no weight if it is conclusory and/or is not supported by objective testing or the record as a whole).

Furthermore, the ALJ properly gave the opinions of Dr. Crow and Dr. Kellett "little weight" because they were not supported by other evidence of record.  *Compare* Nurse Knight's treatment notes from Abner Creek Family Medicine from July 2002, which show that while Plaintiff had a positive straight leg raise test on the left and pain upon heel-toe walking, she had only a "mildly positive" straight leg raise on the right, and 4.5/5 bilateral muscle strength.  (Tr. 193)  As the ALJ found, Ms. Knight's notes dated between September 2002 and May 2003 indicated that while Plaintiff had rhinitis, bronchospasms, intervertebral disc disease, depression, hip pain, irritable bowel syndrome, polymyalgias, and osteoarthritis, she retained essentially full strength and function throughout her body.  (Tr. 14, 187-92)  *See* 20 C.F.R. § 404.1513(d) (noting that the Agency can consider evidence from other sources, including nurse practitioners, in evaluating residual functional capacity); SSR 06-03p (same).

The court finds that the ALJ properly weighed the opinions of the Plaintiff's treating physicians, Dr. Crow and Dr. Kellett. The ALJ's opinion is consistent with the weight of the medical evidence of record as well as with the Plaintiff's testimony. The court finds no error.

## II. The ALJ committed reversible error by applying an improper standard when assessing the pain suffered by the Plaintiff.

The Fourth Circuit has adopted a two-step process for determining whether a claimant is disabled by pain. First, there must be objective medical evidence of the existence of a medical impairment which could reasonably be expected to produce the actual amount and degree of pain alleged by the claimant. *See Craig v. Chater*, 76 F.3d 585, 594 (4th Cir. 1996). Second, the intensity and persistence of the claimant's pain must be evaluated, as well as the extent to which the pain affects the claimant's ability to work. *See Craig*, 76 F.3d at 595. Once the first step is met, the ALJ cannot dismiss the claimant's subjective complaints simply because objective evidence of the pain itself is lacking. *See Craig*, 76 F.3d at 595. This does not mean, however, that the ALJ may not use objective medical evidence in evaluating the intensity and persistence of pain. In *Craig*, the court stated:

> Although a claimant's allegations about [his] pain may not be discredited solely because they are not substantiated by objective evidence of the pain itself or its severity, they need not be accepted to the extent they are inconsistent with the available evidence, including objective evidence of the underlying impairment, and the extent to which that impairment can reasonably be expected to cause the pain the claimant alleges [he] suffers[.] 76 F.3d at 595.

The undersigned finds that the ALJ used the correct standard for assessing pain (Tr. 14-15), and substantial evidence supports the ALJ's finding that the Plaintiff's subjective complaints of disabling pain limitations were not credible. The ALJ acknowledged Plaintiff's subjective complaints, including her testimony at the hearing that she experienced chronic pain due to her impairments, and her testimony that she was terminated from her last job because of memory problems caused by Dilantin and her inability to hold the phone to her shoulder or sit

Page 13 of 18

for more than 15 minutes at a time. (Tr. 14) The ALJ, however, was not required to accept

Plaintiff's allegations without question. *See Craig*, 76 F.3d at 591. As discussed above, the

objective medical evidence from the relevant time period, namely the notes of Ms. Knight, did

not indicate the degree of symptomology and limitation that Plaintiff alleged. Indeed, these

records indicated that Plaintiff had essentially full strength and function throughout her body

and no functional limitations. (Tr. 183-197) The ALJ properly considered the extent to which

the medical evidence failed to support her subjective complaints regarding her limitations. (Tr.

14-15); *see Johnson v. Barnhart*, 434 F.3d 650, 658 (4th Cir. 2005) (approving ALJ's rejection

of claimant's testimony because it was inconsistent with objective medical evidence); *see also*

20 C.F.R. § 404.1529(c); SSR 96-7p (adjudicator must make a finding of credibility based on

consideration of the entire case record, including medical and nonmedical evidence). This

court's review of the record reflects that the ALJ considered the evidence as a whole and

properly found that Plaintiff's subjective complaints were not totally credible. (Tr. 14-15)

Contrary to Plaintiff's argument that the ALJ improperly evaluated her credibility,[6] the

ALJ's conclusion that Plaintiff's subjective complaints were not fully credible and did not

support a finding of disability prior to June 26, 2003, was supported by substantial evidence and

will be upheld by the court. *See Hays*, 907 F.2d at 1156. The ALJ properly considered the

objective evidence of record (Tr. at 12-15) and the court finds that substantial evidence supports

the ALJ's finding that her allegations of disabling pain were not totally credible. In so holding,

the court is aware that the ALJ found the Plaintiff's testimony to be not wholly consistent with

the weight of the medical evidence, and not fully credible. (Tr. 14) Specifically, as the record

---

[6]    Plaintiff's Brief at 14-15.

reflects, the Plaintiff had received unemployment benefits during the Relevant Time Period. (Tr. 315) The ALJ noted that applying for and receiving unemployment compensation during the Relevant Time Period was inconsistent with Plaintiff's claim that she was unable to work during the Relevant Time Period. (Tr. 14) The court agrees.

### III. The final administrative decision of the Social Security Administration that the Plaintiff became disabled on June 23, 2003, rather than August 3, 2002, is not supported by substantial evidence.

A claimant will be found "not disabled" when she retains the residual functional capacity to perform (1) the actual functional demands and job duties of a particular past relevant job; or (2) the functional demands and job duties of the occupation as generally required by employers throughout the national economy. *See* SSR 82-61. The claimant bears the burden of proving her inability to return to her past relevant work. *See id.; see also Pass v. Chater*, 65 F.3d 1200, 1203, 1206-07 (4th Cir. 1995).

Indeed, the medical record as whole does not indicate that the Plaintiff's was totally disabled from all substantial gainful activity as of August 3, 2002. For example, in September 2003, Dr. Ferrell reviewed the medical evidence and found that Plaintiff could perform the exertional demands of light work that did not require more than frequent balancing, kneeling, crouching, and crawling and occasional climbing and stooping.[7] (Tr. 157-164). Dr. Harper

---

[7]    The ALJ did not include limitations to frequent balancing, kneeling, crouching, and crawling and occasional climbing in his assessment of Plaintiff's residual functional capacity. (Tr. 15) However, "[w]here a person has some limitation on climbing and balancing, it would not ordinarily have a significant impact on the broad world of work." See SSR 85-15. Likewise, a limitation to frequent crouching does not substantially effect the occupational base for light work, because crawling and kneeling are "relatively rare even in arduous work" and limitations on the ability to crawl and kneel "would be of little significance in the broad world of work." Id. Plaintiff's past relevant job as a wage verification specialist, which the ALJ found she could do, did not require any balancing, kneeling, crouching, crawling, or climbing. (Tr. 15-17). See DOT No. 215.382-014. Thus, any failure by the ALJ to include these limitations in his residual functional capacity assessment was, at most, harmless error. See Mickles, 29 F.3d at 921 (affirming denial of benefits where the ALJ

reviewed medical evidence pertaining to Plaintiff's mental impairment since June 2003, and found that she was limited to performing very short and simple instructions in situations that did not require ongoing interaction with the public.  Dr. Crosby, a State agency physician, then reviewed the evidence and concluded that Plaintiff's back disorders and depression were disabling as of June 26, 2003, but not earlier.  (Tr. 25)  In June 2004, Dr. Hopkins, another State agency physician, affirmed Dr. Ferrell's physical residual functional capacity assessment, and Dr. Clanton, a State agency psychologist, reviewed the evidence and concurred with Dr. Harper's conclusion that Plaintiff could carry out very short and simple instructions that did not require ongoing public contact.  (Tr. 128-30, 164).  Dr. Hopkins then affirmed the previous finding that Plaintiff's disability commenced on June 26, 2003, but not earlier.  (Tr. 24)

As the ALJ found, the findings of Drs. Ferrell, Hopkins, Harper, and Clanton supported his conclusion that Plaintiff could perform light work that did not require more than occasional stooping prior to June 26, 2003, and that the Plaintiff was not disabled prior to that date.  (Tr. 15-17)  It is well settled that agency physicians are highly qualified experts in matters relating to the establishment of disability under the Act; as such, their opinions are entitled to significant weight.  *See* 20 C.F.R. § 404.1527(f); *see also* SSR 96-6p ("Findings of fact made by State agency [] consultants regarding the nature and severity of an individual's impairment(s) must be treated as expert opinion evidence of non-examining sources."); *see also Perales*, 402 U.S. at 408 (holding that the use of non-examining medical experts is proper); *Hunter v. Sullivan*, 993 F.2d 31, 35 (4th Cir. 1993) (an ALJ may properly give significant weight to an assessment from a non-treating physician).

---

erred in evaluating claimant's pain because "he would have reached the same result notwithstanding his initial error").

Page 16 of 18

Here, the ALJ found that during the Relevant Time Period, the Plaintiff retained the residual functional capacity to perform light work that did not require more than occasional stooping. (Tr. 15-16)  Furthermore, the medical evidence did not show that Plaintiff had any mental limitations that would preclude her from performing the demands of semi-skilled work during the Relevant Time Period.  Although the Plaintiff claimed disability in part due to depression (Tr. 12, 309-310), the record reflects that Nurse Knight treated the Plaintiff's depression between September 2002 and May 2003 with anti-depressant medications.  The ALJ can consider the lack of mental health treatment in determining whether a claimant suffers from a severe mental impairment. *Seabolt v. Barnhart*, —F.Supp.2d —, 2007 WL 1021011 at (D.S.C. March 26, 2007), *citing Owens v. Barnhart*, 400 F.Supp.2d 885, 891 (W.D.Va. 2005). However, there was no evidence that she was examined or treated by a mental health professional prior to  June 26, 2003, the date that she underwent a consultative psychological evaluation by Dr. Bodtorf at the request of the State disability determination agency.  (Tr. 106-110)

The ALJ found that Plaintiff's past relevant work as a wage verification specialist was most analogous to the job of payroll clerk in the DOT.  (Tr. 15) *See* DOT No. 215.382-014. This job was sedentary and semi-skilled, and was consistent with the limitations set forth in the ALJ's assessment of Plaintiff's residual functional capacity. (Tr. 15). *See id.*  Thus, substantial evidence supported the ALJ's conclusion that Plaintiff could perform her past relevant work prior to June 26, 2003, and therefore, was not disabled during the Relevant Time Period. *See Pass*, 65 F.3d at 1203, 1206-07; 20 C.F.R. § 404.1520(f).

Page 17 of  18

It was Plaintiff's burden to show that her impairments and resultant limitations would prevent her from being able to perform any work, and she did not meet that burden in this case. *See Blalock*, 483 F.2d at 775 (the claimant bears the burden of proving disability to the satisfaction of the Commissioner and it is the claimant who bears the risk of non-persuasion). The court finds no error in the ALJ's determination that the Plaintiff was not disabled during the Relevant Time Period.

As mentioned above, the role of the federal judiciary in the administrative scheme established by the Social Security Act is a limited one. The Act provides, "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive[.]" 42 U.S.C. § 405(g). "Consequently, judicial review . . . of a final decision regarding disability benefits is limited to determining whether the findings are supported by substantial evidence and whether the correct law was applied." *Walls v. Barnhart*, 296 F.3d 287, 290 (4th Cir. 2002). In the case now before the court, the Commissioner's final decision is supported by substantial evidence, and there was a correct application of the law. Therefore, it is recommended that the decision be affirmed.

## **RECOMMENDATION**

Based upon the foregoing, **it is recommended that the Commissioner's decision be AFFIRMED.**

_____
GEORGE C. KOSKO
UNITED STATES MAGISTRATE JUDGE

May 29, 2007

Charleston, South Carolina

Page 18 of 18